UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

JACQUELINE SYLVIA TELFAIRE,

    Plaintiff,

v.

NANCY BERRYHILL,
ACTING COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.

Case No. 3:18-cv-3449-BRM

**OPINION**

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Jacqueline Sylvia Telfaire's ("Telfaire") appeal from the final decision of Nancy Berryhill, the Acting Commissioner of Social Security ("Commissioner")[1], denying her application for Social Security Disability Benefits. Having reviewed the administrative record and the submissions filed in connection with the appeal pursuant to Local Civil Rule 9.1, and having declined to hold oral argument pursuant to Federal Civil Rule 78(b), for the reasons set forth below and for good cause shown, the Commissioner's decision is **AFFIRMED**.

**I.    BACKGROUND**

On January 27, 2014, Telfaire applied for Social Security Disability Insurance ("SSDI") benefits, alleging an onset of July 30, 2012, due to sciatica, degenerative disc release, osteoarthritis

---

[1] Upon the Appeals Council's Order denying Telfaire's request for a review of the Administrative Law Judge's ("ALJ") decision, the ALJ's decision became the final decision of the Commissioner. (Tr. 1.)

of both knees, arthritis, insomnia, and significant mental health issues, including bipolar type I, mixed severe with psychotic features, major depression, post-traumatic stress disorder, and borderline personality disorder. (Tr. 33, 35-36, 50, 72-73.) Her claim was denied initially on February 20, 2014, and on reconsideration on July 1, 2014. (Tr. 137.) On August 1, 2014, Telfaire filed a written request for an administrative hearing. (Tr. 143.) On August 2, 2016, a hearing was held, where Telfaire appeared and testified before ALJ Sharon Allard. (Tr. 31, 33-71.) Impartial vocational expert, Tanya Edghill, also appeared and testified at the hearing. (Tr. 31, 33.) On November 25, 2016, the ALJ issued a decision denying benefits. (Tr. 10, 17-25.) The ALJ found that as of November 14, 2016, Telfaire was disabled pursuant to Rule 202.06 of the Grids. (Tr. 24-25.) However, the ALJ determined prior to the date of November 14, 2016, that Telfaire retained the ability to perform light work, being off task only ten-percent of the workday due to her impairments, and thus did not have an impairment required for social security disability benefits. (Tr. 18.) The Appeals Council denied Telfaire's request for review, rendering the ALJ's decision the Commissioner's final decision. (Tr. 1-5.) Having exhausted her administrative remedies, Telfaire filed the action seeking review of the Commissioner's final decision on March 9, 2018. (ECF No. 1.)

## II. STANDARD OF REVIEW

On a review of a final decision of the Commissioner of the Social Security Administration, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are deemed conclusive by a reviewing court if supported by "substantial evidence in the record." 42

U.S.C. § 405(g); *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). This Court must affirm an ALJ's decision if it is supported by substantial evidence. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). To determine whether an ALJ's decision is supported by substantial evidence, this Court must review the evidence in its totality. *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984). However, this Court may not "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) (citation omitted). Accordingly, this Court may not set an ALJ's decision aside, "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citations omitted).

### III. THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

Under the Social Security Act, the Social Security Administration is authorized to pay Social Security Insurance to "disabled" persons. 42 U.S.C. § 1382(a). A person is "disabled" if "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A person is unable to engage in substantial gainful activity when his physical or mental impairments are "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated under the Social Security Act establish a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 416.920(a)(1). First, the ALJ determines

whether the claimant has shown that he or she is not currently engaged in "substantial gainful activity." *Id.* §§ 404.1520(b), 416.920(b); *see Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987). If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits. *See* 20 C.F.R. § 404.1520(b); *see also Bowen*, 482 U.S. at 140. Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c); *see Bowen*, 482 U.S. at 146-47 n.5. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). These activities include physical functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." *Id.* A claimant who does not have a severe impairment is not considered disabled. *Id.* at § 404.1520(c); *see Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).

Third, if the impairment is found to be severe, the ALJ then determines whether the impairment meets or is equal to the impairments listed in 20 C.F.R. § Pt. 404, Subpt. P., App. 1 (the "Impairment List"). 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates that his or her impairments are equal in severity to, or meet those on the Impairment List, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits. *See id.* at §§ 404.1520(d), 416.920(d); *see also Bowen*, 482 U.S. at 146-47 n.5. If the specific impairment is not listed, the ALJ will consider in his or her decision the impairment that most closely satisfies those listed for purposes of deciding whether the impairment is medically equivalent. *See* 20 C.F.R. § 404.1526(a). If there is more than one impairment, the ALJ then must consider whether the combination of impairments is equal to any listed impairment. *Id.* An impairment or combination

of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar. *Williams*, 970 F.2d at 1186.

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he or she retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f); *Bowen*, 482 U.S. at 141. Step four involves three sub-steps:

> (1) the ALJ must make specific findings of fact as to the claimant's [RFC]; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the [RFC] to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.

*Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 120 (3d Cir. 2000) (citations omitted). When determining RFC, "[a]n ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." *Hoyman v. Colvin*, 606 F. App'x 678, 679-80 (3d Cir. 2015) (quoting *Plummer*, 186 F.3d at 429). Unsupported diagnoses are not entitled to great weight. *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991). Moreover, an administrative law judge must provide the reason for providing more or less weight to the evidence. *See Fragnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001).

The claimant is not disabled if his RFC allows him to perform his past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). However, if the claimant's RFC prevents him from doing so, an administrative law judge proceeds to the fifth and final step of the process. *Id.* The final step requires the administrative law judge to "show [that] there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and [RFC]." *Plummer*, 186 F.3d at 428. In

doing so, "[t]he ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled." *Id.* (citation omitted). Notably, an administrative law judge typically seeks the assistance of a vocational expert at this final step. *Id.* (citation omitted).

The claimant bears the burden of proof for steps one, two, and four. *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000). Neither side bears the burden of proof for step three "[b]ecause step three involves a conclusive presumption based on the listings." *Id.* at 263 n.2 (citing *Bowen*, 482 U.S. at 146-47 n.5). An administrative law judge bears the burden of proof for the fifth step. *See id.* at 263.

## IV. DECISION

Telfaire challenges the ALJ's decision on several grounds. Telfaire argues the ALJ erred by failing to properly consider: (1) the listing of 1.04 for disorders of the spine; and (2) the evidence provided in the claimant's record in accordance with case law and regulations, including the opinions of Ms. Watson, Dr. Nemser, and Dr. Resinkoff. (ECF No. 9 at 14.) As a result, Telfaire requests a reversal of the ALJ decision and a remand to remediate the alleged errors. (*Id.* at 33.) The Commissioner counters that: (1) Telfaire did not meet the Act's definition of disability during the relevant period, (2) substantial evidence in the record supports the ALJ's finding that Telfaire's impairments or combination of impairments did not satisfy any listing, (3) the ALJ gave appropriate consideration to the relevant lay witness testimony and properly evaluated Telfaire's subjective complaints, and (4) substantial evidence supports the ALJ's hypothetical question to the vocational expert ("VE"), which contained all of the credibly established limitations supported by the record. (ECF No. 10 at 6.) This Court addresses each of Telfaire's arguments in turn.

### A. The ALJ Properly Considered the Listing of 1.04

Telfaire argues the ALJ failed to properly consider the Listing of 1.04 for disorders of the spine. (ECF No. 9 at 14.) Specifically, Telfaire argues the ALJ incorrectly found that the Listing requires evidence of spinal cord compression. (ECF No. 9 at 11-12.) The Commissioner counters that Telfaire has failed to cite sufficient evidence to satisfy Listing 1.04. (ECF No. 10 at 5.) Alternatively, the Commissioner argues that if the ALJ erred, such error was harmless. (ECF No. 10 at 12.)

During step three, the ALJ compares the medical evidence of a claimant's impairments with the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, which are presumed severe enough to preclude any gainful work. *See Holley v. Colvin*, 975 F. Supp. 2d 467, 476 (D.N.J. 2013), *aff'd*, 590 F. App'x 167 (3d Cir. 2014). The listings articulated in 20 C.F.R. Pt. 404, Subpt. P., App. 1, are descriptions of various physical and mental illnesses and abnormalities, categorized by the body system they affect. *Sullivan v. Zebley*, 493 U.S. 521, 529-30 (1990). All impairments are defined "in terms of several specific medical signs, symptoms, or laboratory test results." *Id.* at 530. "If a claimant's impairment meets or equals one of the listed impairments, he will be found disabled. . . . If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to step four." *Holley*, 975 F. Supp. 2d at 476. To be found disabled, however, the claimant "must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan*, 493 U.S. at 531.

"For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.*; *see* Social Security Ruling (SSR) 83—19, Dep't of Health & Human Servs. Rulings 90 (Jan. 1983) ("An impairment meets a listed condition . . . only when it

7

manifests the specific findings described in the set of medical criteria for that listed impairment."); 20 C.F.R. § 416.926(a) (1989) (noting that a claimant's impairment is "equivalent" to a listed impairment "if the medical findings are at least equal in severity and duration to the criteria of any listed impairment"). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan*, 493 U.S. at 531–32 (citing SSR 83–19, at 91–92 ("[I]t is incorrect to consider whether the listing is equaled on the basis of an assessment of *overall* functional impairment. . . . The functional consequences of the impairments . . . irrespective of their nature or extent, *cannot* justify a determination of equivalence" [sic])).

> Section 1.04(A) for disorders of the spine provides:
>
> (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With: A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

20 C.F.R. Pt. 404, Subpt. P, App. 1.

Here, the ALJ had found "there is no evidence of cord compression," however, the ALJ provided no direct consideration as to whether there was evidence of a nerve root compression, as required under Section 1.04. (Tr. 18.) The ALJ acknowledges the fact that Telfaire suffers from a complex broad-based extruded disk herniation that encroaches on the ventral aspect of the thecal sac abutting the nerve root,[2] but never states directly why such a herniated disc does not satisfy

---

[2] Abutting the thecal sac is not the same as showing a nerve root compromise. *Blosser v. Colvin*, No. 14-1308, 2015 WL 4410084, at *8 (M.D. Pa. July 20, 2015) (finding an encroachment on the thecal sac does not demonstrate a nerve root compromise or compression); *Dier v. Colvin*, No. 13-

8

the first part of Section 1.04. (Tr. 18, 21, 474.) However, such an error is harmless. *Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016) (finding a deficiency in analysis to be a harmless error if claimant fails to offer an explanation of "how further analysis could have affected the outcome of his disability claim"); *see, e.g., Hendry v. Comm'r of Soc. Sec.*, No. 16-08851, 2018 WL 4616111, at *12 (D.N.J. Sept. 26, 2018); *Browner v. Berryhill*, No.16-6237, 2018 WL 3031516, at *7 (E.D. Pa. June 19, 2018). Here, Telfaire claims the ALJ incorrectly applied Section 1.04. (ECF No. 9 at 11-12.) However, Telfaire offers no argument for how further analysis could have affected the outcome of her claim.

Telfaire argues, with respect the second part of Listing 1.04, that the ALJ made a conclusory statement and failed to properly consider the evidence in the record of a nerve root compression. (ECF No. 9 at 16.) Telfaire argues the ALJ made a conclusory statement in failing to consider evidence provided by: (1) Be Well Family Practice (ECF No. 9 at 16-17); (2) Dr. Avhad (ECF No. 9 at 17-20); (3) Dr. Roque (ECF No. 9 at 20-21); and (4) Dr. Ayala. (ECF No. 9 at 21-23).

To conclude an applicant is not disabled under step three, the ALJ must "set forth the reasons for [her] decision" during her step-three analysis. *Burnett*, 220 F.3d at 119. Conclusory statements have been found to be "beyond meaningful judicial review." *Cotter v. Harris*, 642 F.2d 700, 704-05 (3d Cir. 1981). As the Third Circuit has explained, the ALJ is not required to "use particular language or adhere to a particular format in conducting his analysis . . . [but must] ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.3d at 505. The ALJ satisfies this standard by "clearly evaluating

---

502S, 2014 WL 2931400, at *3 (W.D.N.Y. June 27, 2014) (finding contact with the thecal sac or nerve root does not demonstrate a nerve root compromise or compression).

the available medical evidence in the record and then setting forth that evaluation in an opinion, even where the ALJ did not identify or analyze the most relevant Listing." *Scatorchia v. Comm'r of Soc. Sec.*, 137 F. App'x 468, 470–71 (3d Cir. 2005).

The Court finds the ALJ sufficiently considered all evidence provided. The ALJ's decision detailed the opinions of the parties listed and explained what weight, if any, was considered. (Tr. 20-23.) In considering the evidence provided, the ALJ determined: (1) Be Well Family Practice's evidence "delineated the claimant's complaints of back pain" (Tr. 21); (2) Dr. Avhad's evidence "showed normal strength and no evidence of neurological deficits" (*id.*); (3) Dr. Roque's evidence showed "no acute distress and lumbosacral limitation of flexion as well [as] positive straight leg raising" (Tr. 20-21); and (4) Dr. Ayala's evidence "indicate[d] that she was independent in all aspects of daily activities." (Tr. 21.) The ALJ clearly considered and properly evaluated all evidence provided and thus did not make a conclusory statement.

### B. The ALJ Properly Considered the Evidence Provided

Telfaire contends the ALJ failed to consider or weigh the evidence provided in the claimant's record in accordance with case law and regulations, including the opinions of Ms. Watson, Dr. Nemser, and Dr. Resinkoff. (ECF No. 9 at 14.) Specifically, Telfaire argues the ALJ failed to consider: three-months of objective assessments made by Ms. Watson; Dr. Roque's January 10, 2014 assessment and analysis of Telfaire's lumbar spine's limited range of motion; the controlling weight of Dr. Nemser''s opinion, her treating physician; and Dr. Resnikoff''s findings and diagnoses. (ECF No. 9 at 17-26, 30-32.) The Commissioner contends that the ALJ provided legitimate and substantial reasons as to why she accorded only some weight to the evidence in question. (ECF No. 10 at 20-21.)

In making a disability determination, the ALJ must consider all evidence before him. *See e.g. Plummer*, 186 F.3d at 433; *Doak v. Heckler*, 790 F.2d 26, 29 (3d Cir. 1986). Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reasons for discounting such evidence. *Burnett*, 220 F.3d at 121; *Cotter*, 642 F.2d at 705. In *Burnett*, the Third Circuit held that the ALJ had not properly decided an evidentiary issue because he "fail[ed] to consider and explain his reasons for discounting all of the pertinent evidence before him in making his residual functional capacity determination." *Burnett*, 220 F.3d at 121. "In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705. Consequently, an ALJ's failure to note if evidence that contradicts his findings was considered, or to explain why such information was not credited, are grounds for a remand. *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 435 (3d Cir. 1999). However, this rule does not require an ALJ to explicitly discuss every piece of relevant evidence in his decision. *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001). For example, an ALJ may be entitled to overlook evidence that is neither pertinent, relevant, nor particularly probative. *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008); *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004).

Although the ALJ must not "reject evidence for no reason or for the wrong reason, [he] may choose whom to credit when considering conflicting evidence." *Kerdman v. Comm'r of Soc. Sec.*, 607 F. App'x 141, 144 (3d Cir. 2015). A reviewing court "may not re-weigh the evidence." *Id.* Thus, even if there is contrary evidence in the record that would justify the opposite conclusion, the ALJ's decision will be upheld if it is supported by substantial evidence. *See Simmonds*, 807 F.2d at 58. In determining the appropriate weight to give a treating physician's opinion, an ALJ weighs the opinion against several factors, including treatment relationship, the doctor's specialty,

the consistency of the opinion with the record as a whole, and the decree to which an opinion is supported by relevant evidence. 20 C.F.R. §§ 404.1527(c)(2)-(4) and (d). Because the ALJ need not undertake an exhaustive discussion of the record, *Knepp*, 204 F.3d at 83, as long as the ALJ articulates his reasoning and bases it in the evidence, a written analysis of every piece of evidence in the record is not required. *Phillips v. Barnhart*, 91 F. App'x 775, 779 n.7 (3d Cir. 2004).

### i. The ALJ Properly Considered the Opinion of Ms. Watson

The Court finds the ALJ sufficiently explained her reasons for giving "little weight" to the opinion of Ms. Watson. *See* 20 C.F.R. § 404.1527(f)(2)(ii); *Rutherford v. Barnhart*, 399 F.3d 546, 557 (3d Cir. 2005). The ALJ explained that she only gave "some weight" to the opinion of Ms. Watson formed on August 25, 2016, because alternative records stated, "that the claimant is clinically stable . . . that there is no psychosis, thought process is logical, and attention span/concentration is fair." (Tr. 22-23.) Additionally, the ALJ cites to Telfaire's own testimony where she speaks of shopping for groceries, clothes, and toiletries as well as helping with household chores. (*Id.*) Such evidence "depict[s] functioning at a greater level than assessed by the counselor." (*Id.*) Accordingly, the Court finds the ALJ clearly considered and properly evaluated the opinion of Ms. Watson.

### ii. The ALJ Properly Considered the Opinion of Dr. Nemser

The Court finds the ALJ sufficiently explained her reasons for giving "little weight" to the opinion of Dr. Nemser. *See* 20 C.F.R. § 404.1527(f)(2)(ii); *Rutherford*, 399 F.3d at 557. The ALJ explained that she gave "little weight" to the opinion of Dr. Nemser formed on August 24, 2015, because a record of chiropractic treatment dated August 14, 2015, stated, "that the claimant achieved significant symptomatic relief from lumbar radiculopathy, which is inconsistent with such a restrictive residual functional capacity." (Tr. 22.) Additionally, the ALJ cites to Telfaire's

12

own testimony where she speaks of helping her daughter to clean. (*Id.* at 22, 239-43.) Such evidence "does not account for such a restrictive residual functional capacity." (*Id.*) The ALJ clearly considered and properly evaluated the opinion of Dr. Nemser and had substantial evidence to afford Dr. Nemser little weight. *Williams*, 970 F.2d at 1185.

### iii. The ALJ Properly Considered the Opinion of Dr. Resnikoff

The Court finds the ALJ sufficiently explained her reasons for giving "some weight" to the opinion of Dr. Resnikoff. *See* 20 C.F.R. § 404.1527(f)(2)(ii); *Rutherford*, 399 F.3d at 557. The ALJ explained that she gave "some weight" to the opinion of Dr. Resnikoff's global assessment of functioning rating because it was generally consistent with mental health treatment records. (Tr. 22.) However, the ALJ determined Dr. Resnikoff's rating to be "a snapshot of the claimant's functioning during a one-time examination and [did] not accurately reflect a longitudinal overview of the claimant's mental functioning." (*Id.*) Accordingly, the Court concludes the ALJ clearly considered and properly evaluated the opinion of Dr. Resnikoff. *Williams*, 970 F.2d at 1185.

## V. CONCLUSION

For the reasons set forth above, the Commissioner's decision is **AFFIRMED.**

**Date:** September 30, 2019  /s/ *Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**